1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

IN THE MATTER OF THE ARBITRATION
BETWEEN

7

LEONARD BOSACK, SANDY LERNER,
and CARTESIAN PARTNERS, L.P.,

No.  C07-574Z

8

9

Petitioners,

10

v.

11

DAVID C. SOWARD and MANAGEMENT
COMPANY,

12

Respondents.

13

―――――――――――――――――――――――

14

DAVID C. SOWARD, et al.,

No. C07-1663Z

15

Petitioners,

16

v.

ORDER

17

THE & TRUST, et al.,

18

Respondents.

―――――――――――――――――――――――

19

20

This matter comes before the Court on Petitioner Sandy Lerner's Motion to Vacate

21

Certain Arbitral Awards Pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, docket no.

22

33, Petitioners Leonard Bosack, The Leonard Bosack Trust, Richard Troiano, The & Trust,

23

& Capital Partners, L.P., Cartesian Partners, L.P., The Leonard X. Bosack and Bette M.

24

Kruger Charitable Foundation, Inc., and & Capital, Inc.'s Motion to Vacate Arbitration

25

Awards, docket no. 40, and David C. Soward's Cross-Motion to Confirm Final Arbitration

26

Award, docket no. 52.  The Court has now considered the briefs, declarations, and exhibits,

in support of, and in opposition to, the motions, counsel's oral argument on January 31,

ORDER   1–

1  2008, and Petitioner Sandy Lerner's Notice of Submission of Additional Authority, docket

2  no. 65.  The Court enters the following Order confirming the arbitration awards.

3  ## I.  BACKGROUND

4       In the 1990s, Petitioners Sandy Lerner and Leonard Bosack, the founders of Cisco

5  Systems, Inc., hired Respondents David Soward and a company Soward created, &

6  Management Company (collectively "Soward"), to manage their personal assets.  Bromberg

7  Decl., docket no. 42, Ex. 30 (Bosack Decl.) ¶¶ 3-4.  Soward managed the assets of four

8  "investment entities:" (1) the & Trust, a charitable remainder trust organized under

9  California law in which Soward was the manager, and Lerner, Bosack and Richard Troiano

10 were the trustees; (2) the Leonard X. Bosack and Bette M. Kruger Charitable Foundation

11 (the "Foundation"); (3) & Capital Partners, L.P. ("& Capital"), a Delaware limited

12 partnership in which Soward was the general partner and the Bosack Trust and the Lerner

13 Trust were the limited partners; and (4) Cartesian Partners, L.P. ("Cartesian"), a Delaware

14 limited partnership in which Soward was the general partner and the Bosack Trust was the

15 sole limited partner.  Id., Ex. 30 (Bosack Decl.) ¶¶ 6-7.  Lerner was not a partner in Cartesian

16 at the time of its formation in 1999.  Id., Ex. 30 (Bosack Decl.) ¶ 6.

17      On November 24, 2003, Lerner and Bosack, through their lawyers, sent Soward's

18 lawyer a letter[1] that "discontinued Mr. Soward's engagement as their investment manager

19 effective immediately, removed him as the general partner for the limited partnerships, and

20 concluded his employment with & Capital, Inc."  Bromberg Decl., Ex. 13 (Letter).  A draft

21 complaint accompanied the letter.  Id., Ex. 13 (Draft Complaint).  At or around the same

22 time as Bosack's November 2003 removal of Soward as general partner of Cartesian, Bosack

23 substituted SLLB, LLC ("SLLB"), a Delaware limited liability company whose members

24 were the Sandy Lerner Trust and the Leonard Bosack Trust, as general partner of Cartesian.

25

26       [1] The letter was drafted on behalf of "Sandy Lerner and Leonard Bosack, and their
respective individual trusts, The & Trust, & Capital Partners, and Cartesian Partners, L.P."

1  Appendix of Arbitration Awards, docket no. 44, Ex. 4 (Interim Award #4) at 4.  SLLB took

2  control of the assets of Cartesian.  Interim Award #4 at 20.

3      In February 2004, Soward demanded arbitration.  Bromberg Decl. ¶ 3, Ex. 1

4  (Statement of Claim).[2]  Among other claims, Soward sought a dissolution of Cartesian and an

5  accounting of his interest in the Cartesian partnership.  Id., Ex. 1 at 19-21, ¶¶ 82- 88.  The &

6  Trust Management Agreement contained an arbitration clause.  Bromberg Decl., Ex. 8 (the

7  "Management Agreement") at 4, ¶ 9.  The arbitration clause provided that "any dispute

8  between the parties concerning any provision in this Agreement . . . shall be resolved by

9  arbitration," and that "[t]he arbitrators shall have the authority to make an award based on

10  the equities of the dispute, and such award may include attorneys' fees and costs to . . . the

11  party primarily prevailing in such dispute."  Id., Ex. 8 at 4, ¶ 9.  The agreements governing

12  the other investment entities, including Cartesian, did not contain arbitration clauses.  Id., Ex.

13  9 (& Capital Agreement), Ex. 10 (the unexecuted "Wood" Agreement governing Cartesian);

14  see also id., Ex. 30 (Bosack Decl.) ¶ 6.

15      In July 2004, Bosack and Lerner filed a lawsuit against Soward in this Court (the

16  "2004 action").  Bromberg Decl. ¶ 34.  In the 2004 action, Bosack and Lerner took the

17  position that Soward "ha[d] no lawful interest" in Cartesian.  Bosack v. Soward, Case No.

18  C04-1664-TSZ, docket no. 1 (Complaint) at 15, ¶ 56; see also Interim Award #4 at 7.

19  Soward moved this Court to stay the 2004 action pending arbitration.  Because the 2004

20  action concerned all four investment entities, a central issue was whether the arbitration

21  clause in The & Trust Management Agreement applied to disputes concerning the

22  Foundation, & Capital, and Cartesian.  See generally Bromberg Decl., Ex. 27 (Transcript of

23

24  _____

25      [2] Soward alleged claims against the four investment entities (i.e., The & Trust, the
   Foundation, & Capital, and Cartesian), Sandy Lerner, individually and as Trustee on behalf of
   The & Trust and the Sandy Lerner Trust, Leonard Bosack, individually and as Trustee on behalf
26  of The & Trust and the Leonard Bosack Trust, and Richard Troiano, as Trustee on behalf of The
   & Trust.  Soward did not allege any claims against SLLB.

ORDER   3–

1   Hearing).  In November 2004, this Court ordered the parties[3] to proceed to arbitration to

2   permit the arbitrators to determine the arbitrability of the disputes between the parties.  Id.,

3   Ex. 27 at 41-42.  Lerner and Bosack subsequently agreed to arbitrate all disputes between the

4   parties.  Id., Ex. 2 at 8:23-25, ¶ 30 ("This panel need not address issues of arbitrability,

5   however, as [Bosack and Lerner and the other Petitioners] have elected to assert their claims

6   in the present arbitration by filing this Amended Answering Statement and Counterclaims.").

7   As a result, the panel proceeded to determine all claims between the parties in accordance

8   with the arbitration clause contained in The & Trust's Management Agreement.

9       Between September 7, 2006 and June 5, 2007, a panel of arbitrators (the "panel")[4]

10  issued five interim awards, which were subsequently brought within a single final award on

11  July 26, 2007.  Appendix of Arbitration Awards, docket no. 44, Exs. 1-5 (the "Interim Award

12  #s 1-5") and Ex. 6 (the "Final Award").  On August 14, 2007, the panel issued Hearing

13  Order No. 52 to correct in part the Final Award.  Id., Ex. 7.  The arbitration involved in

14  excess of sixty hearing days over a period of more than two years.  Final Award at 2.  Four

15  experts and approximately twenty-six witnesses testified.  Id.  Over five hundred exhibits

16  were introduced into evidence.  Id. at 3; see also Sharp Decl., docket no. 53, ¶ 2 (counting

17  706 exhibits).

18      Interim Award #1, which the panel issued on September 7, 2006, determined

19  numerous claims and counterclaims,[5] including Soward's claim for an accounting and

20  ――――――――――――

21      [3] By the time the Court ordered the parties to proceed to arbitration, Plaintiffs had
    amended their complaint to add three additional plaintiffs: (1) & Capital Partners, L.P., (2)
22  Cartesian Partners, L.P., and (3) & Capital, Inc.  Bosack v. Soward, Case No. C04-1664-TSZ,
    docket no. 24 (Amended Complaint).

23      [4] Three arbitrators, Professor J. Lani Bader, Zela G. Claiborne, and Thomas J. Klitgaard,
    issued Interim Award Nos. 1-4.  Because a conflict of interest arose for Mr. Klitgaard during the
24  course of arbitration, he did not participate in subsequent awards.  As a result, Professor Bader
    and Ms. Claiborne, whose resumes are attached as Exhibits 15 and 16 to the Sharp Decl., docket
25  no. 53, issued Interim Award No. 5, the Final Award, and Hearing Order No. 52.

26      [5] This Order focuses on the panel's decision in Interim Award #1 on Soward's claim #2,
    regarding Soward's share in the Cartesian partnership; however, it is noteworthy that Petitioners

ORDER  4–

distribution of his partnership interest in Cartesian.  Interim Award #1 at 13-20, 56-57.  The

panel found that "[t]he Cartesian Partnership Agreement is an oral agreement," and that "the

Wood Agreement ought to provide the relevant terms."  Id. at 15-16; Interim Award #3 at 5

(noting that "the Wood agreement . . . [is] the applicable partnership agreement."); see

Bromberg Decl., Ex. 10 ("Wood Agreement").  Although the parties never signed the Wood

Agreement, the panel found that "Soward and Bosack commenced to implement its terms"

after Soward sent it to Bosack.  Interim Award #1 at 15.  The panel found that "Bosack had

no right to remove [Soward] as General Partner" under the Wood Agreement, and that "upon

Bosack attempting to do so. . . Soward's status would . . . revert to that of a 'special' limited

partner" pursuant to Section 8.4[6] of the Wood Agreement.  Interim Award #1 at 16; see also

id. at 56 ("Soward is and continues to be a partner in Cartesian and is entitled to be paid the

value of his capital account as of his withdrawal as partner"); Interim Award #3 at 3.  The

panel ordered that "an accounting be made of the value of Soward's interest as of

9/30/2006."  Interim Award #1 at 19, 56.  The panel then ruled that if Cartesian paid Soward

the value of his interest within sixty days of the accounting, then Soward would be deemed

to have withdrawn as partner.  Id. at 19-20, 56-57; see also Interim Award #3 at 11.

Alternatively, if Cartesian failed to timely pay Soward, then the panel decreed that Cartesian

would be dissolved pursuant to Title 6, Section 17-802 of the Delaware code applicable to

limited partnerships.  Interim Award #1 at 19-20, 56-57.  Although the panel stated that

---

prevailed on some of their counterclaims against Soward.  See Interim Award #1 at 31-34, 39-43, 51-55; Final Award at 8-9, Items x, xv, xviii, xix.

[6] "Conversion of General Partner's Interest.  Upon cessation of any General Partner's status as a general partner for any reason other than as a result of a transfer of such General Partner's interest pursuant to Section 8.2, such General Partner's interest will be converted into a limited partner interest.  In the event of such a conversion, such General Partner's interest in the net profits and losses of the Partnership will remain unchanged, but such General Partner will lose those rights and obligations accorded a general partner under this Agreement and will assume the rights and obligations of a limited partner."  Bromberg Decl., Ex. 10 ("Wood Agreement") § 8.4.  Neither Petitioners nor Respondents argued that Section 8.2, referenced in Section 8.4, applies to the facts of this case.

ORDER  5–

1   Interim Award #1 was "final," see Interim Award #2 at 8, the panel also stated that Interim

2   Award #1 was "not intended to be confirmable" until it was "incorporated into and made part

3   of the final award."  Interim Award #1 at 9.

4          In Interim Award #3, which the panel issued on December 12, 2006, the panel

5   determined the value of Soward's interest in Cartesian as of September 30, 2006 to be

6   $1,464,391, which comprised Soward's capital contribution ($525,636), together with 14.5%

7   interest in the profits ($970,755), less Soward's proportionate share of the capital call

8   ($32,000).  Interim Award #3 at 9-10.  On December 14, 2006, which was two days after the

9   panel completed the accounting and valuation of Soward's interest in Interim Award #3,

10  Bosack or SLLB, it is not clear which, paid Soward $1,464,391, plus interest.  Interim Award

11  #4 at 7-8.  In contrast to Interim Award #1, the panel intended Interim Award #3 "to be

12  confirmable upon entry by the Panel."  Id. at 10.  In the Final Award, the panel

13  acknowledged that Interim Award #3 had been paid and satisfied and that "Soward for every

14  purpose is deemed to have withdrawn as a partner in Cartesian."  Final Award at 10.

15         During the proceedings leading to Interim Award #1, Soward asked to amend his

16  claims to add tort claims with respect to his partnership interests in & Capital and Cartesian.

17  Nonaka Decl., docket no. 35, Ex. 11.  The panel granted in part the motion, "adding a claim

18  for breach of fiduciary duty as to Bosack for failing to provide an accounting and converting

19  Soward's interest in Cartesian (Seventh Claim) and a separate claim for conversion against

20  Bosack and Lerner for converting Soward's interest in Cartesian to their own use (Eighth

21  Claim)" and "claims for punitive damages relating to the Seventh and Eighth claims."

22  Interim Award #4 at 8.[7]  After hearings in September 2006 and November 2006, the panel

23  issued Interim Award #4 on January 25, 2007 regarding Soward's tort claims for breach of

24  fiduciary duty and conversion.  The panel determined that Bosack was liable for tortious

25

26         [7] The panel permitted Soward's tort claims as to Cartesian, but did not allow Soward to add tort claims with respect to his partnership interest in & Capital.

1  breach of fiduciary duty and that Bosack and Lerner were liable for conversion of Soward's

2  interest in Cartesian.

3        The panel found Bosack liable for breach of fiduciary duty as a result of Bosack's

4  "failing both to account to Soward for the value of his interest in Cartesian within a

5  reasonable time and to pay him the value of that interest."  Interim Award #4 at 20.  The

6  panel determined that the duty to distribute Soward's partnership interest arose under

7  Delaware limited partnership law, 6 Del. Code § 17-604, as a result of Bosack's removal of

8  Soward as general partner.  Id. at 13-14.  Bosack had removed Soward as general partner

9  without any authority under the Wood Agreement.  Bosack intentionally "breached his

10 fiduciary duty as sole limited partner and as an owner of SLLB" by "exercising dominion

11 and control over the assets of Cartesian, in derogation of Soward's rights."  Id. at 22.

12 Soward's interest "was due and payable to [Soward] as of September 29, 2004."  Id. at 18.

13 Between September 2004 and December 2006, when Soward was ultimately paid his interest

14 pursuant to Interim Award #3, Soward "was deprived of the use of those funds for the

15 support of himself and his family, or for whatever other purposes he might choose to put

16 them."  Id.  Bosack "knew the value of Soward's interest in Cartesian as of September 29,

17 2004, the date that SLLB[8] signed its [tax] return" for 2003.  Id. at 16.  The panel found that

18 "the failure of Bosack to provide an accounting to Soward was done for the purpose of

19 making it as difficult as possible for Soward to receive his funds in Cartesian and to hurt

20 him."  Id.

21       The panel also found that Bosack's breach of fiduciary duty was "exacerbated by

22 Bosack's role in manipulating the tax returns filed for the succeeding fiscal year, reducing

23 the amount [of] Soward's interest in Cartesian as of December 31, 2003, from $1,001,101 to

24 $135,889 as a maximum."  Id.  at 16.  "Bosack caused the reduction to be made in the [2004]

25 _____

26      [8] The panel stated that "[t]he evidence does not show whether Bosack or Lerner signed
   [the 2003 tax return] for SLLB," but they inferred that Bosack signed the form.  Interim Award
   #4 at 9.

1  tax return, even though . . . the underlying books and records of Cartesian were never

2  changed and continued to show Soward's interest at $1,001,101." Id. "A balance of

3  $866,101 was transferred [from Soward's account] to Bosack's account" on the 2004 tax

4  return; "[n]o funds were transferred to SLLB's capital account." Id. at 11. "Bosack was kept

5  personally apprised of the transfer of the $866,101" and Bosack "signed the [2004] tax

6  return, under oath, on behalf of SLLB." Id. at 12. The panel found that "the amount of

7  damage was the value of Soward's interest in the assets as of December 31, 2003 –

8  $1,001,101 – plus interest from September 29, 2004 . . . to December 14, 2006." Id. at 22.[9]

9        With respect to the conversion claim against Bosack and Lerner, the panel applied

10  California law to define a conversion as "the wrongful exercise of dominion over the

11  personal property of another, after a demand, accompanied by damage." Interim Award #4

12  at 24. The panel found that "[w]hen Bosack, through the Bosack Trust and through SLLB,

13  and when Lerner through SLLB, took over as of November 24, [2003], they appropriated

14  [Soward's share of the assets of Cartesian] to their own use." Id. "Bosack and Lerner,

15  through SLLB, began to use the assets for paying the operating expenses of their new

16  partnership." Id. SLLB also "file[d] a false partnership tax return" in 2004, which "did not

17  itself constitute a conversion of Soward's interests in the assets," but which "showed a

18  knowing and callous indifference to [Soward's] rights in the property." Id. The 2004 K-1,

19  showing Soward's interest reduced to $135,889, was never sent to Soward. Id. at 12. The

20  panel recognized that although "[t]he evidence did not show whether Lerner personally knew

21  of these events [involving the tax returns] when they occurred . . . when they surfaced in the

22  arbitration, she did not disavow them." Id. The panel concluded that "Bosack and Lerner

23  through SLLB did not just interfere with the dominion of Soward over a small part of his

24

25      [9] Because the $1,001,101 in damages, plus interest, were less than the $1,464,391 paid
to Soward on December 14, 2006, as a result of the accounting award in Interim Award #3, the
26  breach of fiduciary duty claim was deemed satisfied as of December 14, 2006. Interim Award
#4 at 22; Final Award at 10-11.

ORDER   8–

partnership interest in a small amount of specific property, but all of it." <u>Id.</u> at 25.  "[T]heir actions, separately for Bosack and through SLLB for Bosack and Lerner, in failing to turn over to Soward his interest in the assets of Cartesian within a reasonable time was willful conversion" and that Bosack and Lerner are "each individually responsible for the actions of SLLB." <u>Id.</u>  "[A] reasonable time to turn over the assets was no later than September 24, 2004. . . . This was the effective final date of the conversion." <u>Id.</u>  The panel awarded Soward $1,001,101 for conversion, plus interest at 10%; in the Final Award, the panel deemed this conversion claim satisfied in light of the accounting award.  Final Award at 11-12.

Interim Award #5, which the panel issued on June 5, 2007, and Hearing Order No. 49, awarded Soward punitive damages for Bosack and Lerner's tortious conduct.  The panel applied the following California law on punitive damages: "Where the defendant's oppression, fraud or malice has been proven by clear and convincing evidence, California law permits the recovery of punitive damages 'for sake of example and by way of punishing the defendant.'"  Interim Award #5 at 4 (quoting <u>Simon v. San Paolo</u>, 35 Cal. 4th 1159 (2005)); <u>see</u> Cal. Civ. Code § 3294(a).  In awarding punitive damages, the panel largely relied on its findings outlined in Interim Award #4 with respect to Bosack and Lerner's tortious conduct and "bad actions," but also included "a specific finding that Lerner and Bosack acted with the intention of hurting Soward." <u>Id.</u>; <u>see also id.</u> at 6 ("The attempt to strip Soward of his interest in Cartesian was not a casual enterprise, but rather a planned, malicious, purposeful attempt to take Soward's interest in Cartesian away from him and convert it for Bosack's use.").  The panel concluded that "it has been established with clear and convincing evidence that both Bosack and Lerner have acted with malice and oppression toward Soward." <u>Id.</u> at 2 (quoting Hearing Order No. 49); <u>see also</u> Interim Award #4 at 16, 21, 24; Interim Award #5 at 4, 6.

The panel addressed the culpability of Lerner, separate from Bosack:

ORDER   9–

1

2

3

4

      Although the Panel has found that Bosack was the architect of the scheme to strip Soward of his capital account in Cartesian, Lerner, as detailed in Award #4, was a willing participant in the creation of SLLB. She acted in concert with Bosack in implementing the scheme to strip Soward's capital account from Soward and to transfer the account to Bosack. Both of them attempted to eliminate Soward as a partner at all.

5  Interim Award #5 at 2-3 (quoting Hearing Order No. 49). The panel, citing California case

6  law, recognized that due to "the lack of state action, a private contractual arbitration is not

7  subject to the strictures of the due process clause." Id. at 3. Notwithstanding, the panel

8  "endeavored to follow the due process guidelines set forth in BMW v. Gore and successor

9  cases." Id.; see also id. at 4-6. The panel considered the net worth of Bosack and Lerner in

10  determining the amount of punitive damages that would have "sufficient sting" and "a

11  sufficiently deterrent impact." Id. at 3, 6. The panel assessed $10,999,494 in punitive

12  damages – or nine times the compensatory award of $1,222,166 – against Bosack, and

13  $8,555,162 in punitive damages – or seven times the compensatory award – against Lerner.

14  Id. at 6-7; Final Award at 12.

15        The panel issued the Final Award on July 26, 2007. In the Final Award, the panel

16  decided that Soward was the prevailing party in the arbitration and awarded Soward

17  $3,360,576.80 in attorneys' fees and costs. Final Award at 5. The panel allocated

18  $3,004,741.37 for attorneys' fees and costs incurred through Interim Award #3, and

19  $355,835.43 incurred thereafter. Id. at 6, 12. The panel also incorporated Interim Awards

20  #1-5 into the Final Award. Id. at 6-12.

21        Petitioners move this Court to vacate Interim Awards #4 and #5 as to both Bosack and

22  Lerner, Hearing Order No. 49, and the Final Award as to Soward's tort claims, punitive

23  damages, and attorneys' fees.[10]

24  //

25  //

26  ──────────────────

[10] Petitioners are not moving to vacate Interim Awards #1, #2 or #3.

ORDER   10–

1 **II.    DISCUSSION**

2 **A.    Judicial Review of Arbitration Awards**

3    "The inherent nature of arbitration is a consensual agreement of the parties to

4 substitute a final and binding judgment of an impartial entity for the judgment of the court."

5 Coast Trading Co. v. Pac. Molasses Co., 681 F.2d 1195, 1197 (9th Cir. 1982).  "The

6 arbitration award is binding and enforceable unless the district court finds grounds to vacate

7 it" in the Federal Arbitration Act, 9 U.S.C. § 10.  Id.; see also Kyocera Corp. v. Prudential-

8 Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003) (en banc) ("The Federal

9 Arbitration Act, 9 U.S.C. §§ 1-16, enumerates limited grounds on which a federal court may

10 vacate, modify, or correct an arbitral award"); Montes v. Shearson Lehman Bros., Inc., 128

11 F.3d 1456, 1458 (11th Cir. 1997) ("The FAA presumes that arbitration awards will be

12 confirmed, 9 U.S.C. § 9, and enumerates only four narrow bases for vacatur").  "Neither

13 erroneous legal conclusions nor unsubstantiated factual findings justify federal court review

14 of an arbitral award under the statute."  Kyocera, 341 F.3d at 994; see also United

15 Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) ("Courts . . . do not sit to

16 hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing

17 decisions of lower courts.").

18    Petitioners move to vacate the awards pursuant to 9 U.S.C. § 10(a)(4), which

19 authorizes a court to vacate an arbitration award "where the arbitrators exceeded their

20 powers, or so imperfectly executed them that a mutual, final, and definite award upon the

21 subject matter submitted was not made."  "Arbitrators 'exceed their powers' in this regard

22 not when they merely interpret or apply the governing law incorrectly, but when the award is

23 completely irrational or exhibits a manifest disregard of the law."  Kyocera, 341 F.3d at 997

24 (internal citations and quotations omitted).  These grounds afford an extremely limited

25 review authority, a limitation that is designed to preserve due process but not to permit

26 unnecessary public intrusion into private arbitration disputes."  Id. at 998.  "'The court is

1   forbidden to substitute its own interpretation [of a contract] even if convinced that the

2   arbitrator's interpretation was not only wrong, but plainly wrong.'" Id. at 999 (quoting

3   Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1504-05

4   (7th Cir. 1991)); see also Wilko v. Swan, 346 U.S. 427, 436-437 (1953) ("the interpretations

5   of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal

6   courts, to judicial review for error in interpretation").  Manifest disregard of the law means

7   that "the arbitrators recognized the applicable law and then ignored it."  Luong v. Circuit

8   City Stores, Inc., 368 F.3d 1109, 1112 (9th Cir. 2004).  In addition, "an arbitrator's failure to

9   recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard

10  for the law."  Coutee v. Barington Capital Group, L.P., 336 F.3d 1128,1133 (9th Cir. 2003).

11       The panel's authority comes from "the consent of the parties."  Coast Trading, 681

12  F.2d at 1198.[11]  Here, the arbitration clause in The & Trust's Management Agreement

13  granted the panel "the authority to make an award based on the equities of the dispute."

14  Bromberg Decl., Ex. 8 at 4, ¶ 9.  The arbitration clause further authorized an award of

15  "attorneys' fees and costs to the party whom the arbitrator(s) determines to be equitably

16  entitled to such attorneys' fees as the party primarily prevailing in such dispute."  Id., Ex. 8

17  at 4, ¶ 9.  The panel's authority also derived from the other agreements governing the

18  investment entities, and from the consent of all parties to have their disputes resolved in the

19  arbitration proceedings.  See Bromberg Decl., Ex. 2 at 8:23-25, ¶ 30.

20  //

21  //

22  //

23  //

24

25  [11] In Coast Trading, the court vacated an arbitration award "as being contrary to remedies provided in the contract and as beyond the authority of the arbitrators under the submission." Coast Trading, 681 F.2d at 1198.  The Ninth Circuit noted that an arbitration award "will not

26  be shielded from judicial scrutiny intended to insure that the award is grounded on the agreement of the parties and the issues they present for resolution." Id.

ORDER   12–

1  **B.   Tort Awards**

2       **1.   Wood Agreement**

3       Petitioners[12] argue that the panel exceeded its powers in Interim Award #4 by ignoring

4  the plain terms of Wood Agreement, which the panel, in Interim Awards #1 and #3, found

5  "ought to provide the relevant terms" of the oral agreement governing the Cartesian

6  Partnership.  Specifically, Petitioners argue that under Section 8.4 of the Wood Agreement,

7  Soward's removal as general partner converted his interest in the Cartesian Partnership into a

8  limited partner interest, and a limited partner has no right to a distribution until he withdraws

9  or until the partnership dissolves.  Thus, Petitioners argue that they did not breach any

10 fiduciary duty or convert any property by failing to distribute that interest between 2004 and

11 2006.

12      Soward argues that Petitioners failed to treat Soward as a limited partner and, as a

13 result, the panel could appropriately determine that Bosack breached his fiduciary duty and

14 that Bosack and Lerner converted his partnership interest.  Soward also points out that

15 although the panel chose to look to the Wood Agreement to provide the basis for Soward's

16 rights with respect to Cartesian in Interim Award #1, the panel did not find that the Wood

17 Agreement imposed any limitations on Soward's remedies for tortious acts.

18      In his reply brief, Bosack explained that he is "not arguing that the Panel's accounting

19 and tort awards are inherently contradictory," but rather is "arguing that the specific ground

20 on which the tort awards were based, the supposed duty to distribute Soward's interest

21 arising out of the dissolution of the partnership, conflicts with the specific findings made in

22 the accounting claim."  Bosack's Reply, docket no. 58, at 5:22-26.  This Court is not

23 authorized to review these awards *de novo*.  Rather, the Court is limited by 9 U.S.C. §

24 10(a)(4) and cannot conclude that the arbitrators "exceeded their powers" in granting

25 _____

26      [12] These first three arguments – concerning the Wood Agreement, AAA Rule 46, and the functus officio doctrine, were presented in Bosack's motion to vacate, in which Lerner joined. See Bosack's Mot., docket no. 40, at 10-17; Lerner's Mot., docket no. 33, at 1 n.1.

ORDER   13–

1   Soward's tort claims.  Interim Award #4 was not "completely irrational" with the accounting

2   award in Interim Awards #1 and #3, and Bosack's counsel at oral argument emphasized that

3   Petitioners were not arguing that the panel manifestly disregarded the law.  To the extent

4   there are inconsistencies between the legal conclusions and/or factual findings in Interim

5   Awards #1 and #4, the Court declines to vacate the tort awards on this basis because of the

6   standard of review, which prohibits vacatur based on erroneous reasoning, and because the

7   ultimate awards are not "inherently contradictory," as admitted by Petitioners in Bosack's

8   reply brief.  It is consistent for the panel to award an accounting and distribution of Soward's

9   partnership interest in Cartesian, and damages for Petitioners' conversion of that same

10  partnership interest.  The panel was authorized "to make an award based on the equities of

11  the dispute," and the panel was entitled to award Soward his interest in assets of Cartesian as

12  of December 31, 2003, with interest as of September 29, 2004, as the damages for the tort

13  claims in light of Petitioners' failure to recognize Soward's post-removal status as limited

14  partner pursuant to the Wood Agreement.

15          **2.    AAA Rule 46**

16          Petitioners argue that the panel exceeded its powers in Interim Award #4 by

17  reconsidering its prior determinations in violation of Commercial Arbitration Rule 46 of the

18  American Arbitration Association ("AAA").  Rule 46 provides that "[t]he arbitrator is not

19  empowered to redetermine the merits of any claim already decided."  Bromberg Decl., Ex.

20  31 (AAA Rules) at 496.  The panel, in granting Soward's tort claims, did not redetermine the

21  merits of the accounting claim already decided.  Interim Award #4 left Interim Award #3

22  unchanged, and, indeed, Interim Award #3 was already paid and satisfied at the time the

23  panel issued Interim Award #4.  Accordingly, the panel did not violate AAA Rule 46.

24          **3.    Functus Officio Doctrine**

25          Petitioners argue that the panel exceeded its powers and manifestly disregarded the

26  law by reconsidering prior determinations in violation of the functus officio doctrine.  This

ORDER   14–

1   doctrine holds that "once an arbitrator has made and published a final award his authority is

2   exhausted and he is functus officio and can do nothing more in regard to the subject matter

3   of the arbitration."  McClatchy Newspapers v. Central Valley Typographical Union No. 46,

4   686 F.2d 731, 734 (9th Cir. 1982).  "The policy which lies behind this is an unwillingness to

5   permit one who is not a judicial officer and who acts informally and sporadically, to

6   re-examine a final decision which he has already rendered, because of the potential evil of

7   outside communication and unilateral influence which might affect a new conclusion."  Id.

8        Here, the functus officio doctrine does not apply because Interim Awards #4 and 5

9   were issued before the Final Award.  Moreover, Soward's claims for breach of fiduciary

10  duty, conversion, punitive damages, and attorneys' fees and costs were not the subject of

11  Interim Awards #1-3.  The panel specifically reserved jurisdiction over these claims in

12  Interim Awards #1-3.  Interim Award #1 at 9, 56; Interim Award #2 at 10; Interim Award #3

13  at 11.  The panel expressly found that Soward's tort claims provided "a separate and

14  independent ground for relief" from the accounting claim.  Interim Award #4 at 20.

15        **4.      Piercing Corporate Veil**

16        Lerner argues that the panel exceeded its powers by adjudicating an issue – i.e.,

17  piercing the corporate veil – that was not properly before the panel.  Lerner argues that the

18  panel held her personally liable for conversion based SLLB's actions as general partner of

19  Cartesian, and, in particular, SLLB's failure to provide Soward with an accounting and

20  distribution of his partnership interest in Cartesian.  Lerner points out that the piercing the

21  corporate veil issue "was never presented to the panel."  Lerner's Mot. at 9:1.  Lerner faults

22  Soward for failing to add SLLB as a party to the arbitration and for failing to bring a piercing

23  the corporate veil claim before the panel.  This Court, however, faults Lerner for not raising

24  the issue before the panel in defense of the conversion claim pled against her.  At oral

25  argument, Lerner's counsel admitted that Lerner did not bring this issue to the panel's

26  attention.  To the extent Lerner might have been shielded from liability under 6 Delaware

1   Code § 18-303 for the actions of the SLLB, LLC in which her individual trust was a member,

2   it was her burden to bring this law to the panel's attention.  The panel did not manifestly

3   disregard Delaware law governing LLCs because the issue was not presented to the panel.

4        **5.**     <u>**Undisputed Facts**</u>

5        Lerner argues that the conversion award against her was "legally irreconcilable with

6   the undisputed facts" and therefore in manifest disregard of the law and completely

7   irrational.  <u>See</u> <u>Coutee</u>, 336 F.3d at 1133.  She fails to point to any undisputed facts,

8   however, that demonstrate Lerner's innocence.  Lerner argues that "no evidence showed that

9   Lerner was personally involved in the decision not to make a distribution of Soward's capital

10  interest in Cartesian," Lerner's Mot., docket no. 33, at 10, but it is not this Court's role to

11  peruse the voluminous evidentiary record that was before the panel.

12       The panel found that "Bosack and Lerner have taken possession of Soward's interest

13  in Cartesian and converted it to their own interest, causing damage to Soward" and that

14  Lerner "acted in concert with Bosack in implementing the scheme to strip Soward's capital

15  account from Soward, . . . to transfer the account to Bosack," and "to eliminate Soward as a

16  partner."  Interim Award #4 at 23; Interim Award #5 at 3 (quoting Hearing Order No. 49).

17  To the extent Lerner is alleging that these are unsubstantiated findings, unsubstantiated

18  findings cannot form the basis for vacatur of an arbitration award.  <u>See</u> <u>Kyocera</u>, 341 F.3d at

19  994.  The Court cannot vacate the arbitration award based upon any failure of the panel to

20  further detail Lerner's involvement in the specific conduct forming the basis for the

21  conversion award.

22       **6.**     <u>**Conclusion Re: Tort Awards**</u>

23       The Court confirms Interim Award #4 and the Final Award incorporating this award.

24  **C.**     <u>**Punitive Awards**</u>

25       Petitioners, in seeking "exemplary and punitive damages" on their counterclaims in

26  the arbitration against Soward, acknowledged that the panel possessed the authority to award

punitive damages.  Bromberg Decl., Ex. 2 at 27, ¶ 8; <u>see also</u> Bromberg Decl., Ex. 31 (AAA Rules) at 496 (AAA Rule 43 "Scope of Award," providing that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties. . . . ").  The panel ultimately concluded that punitive damages in favor of Soward were appropriate under California law because of the clear and convincing evidence of malice and oppression in failing to account for and distribute Soward's partnership interest in Cartesian after Soward's removal as general partner.

Petitioners argue that the punitive damages award is excessive and violates their due process.  Because due process does not apply to arbitration awards, the Court cannot vacate the awards based on their excessiveness.  <u>See</u> <u>Barnes v. Logan</u>, 122 F.3d 820, 824 (9th Cir. 1997); <u>Todd Shipyards Corp. v. Cunard Line, Ltd.</u>, 943 F.2d 1056, 1063-1064 (9th Cir. 1991).  Petitioners also argue that the panel improperly awarded punitive damages to punish litigation conduct.  The arbitration awards do not bear this out; the panel repeatedly states in Interim Award #5 that they are awarding punitive damages for Petitioners' failure to account and distribute Soward's partnership interest to Soward within a reasonable time of Soward's removal as general partner.  Petitioners also argue that the punitive damages award is irrational in light of the panel's finding made in connection with the accounting claim that Soward remained a partner in Cartesian between November 2003 and December 2006.  The Court has already concluded that the accounting and tort awards are not inherently contradictory, and, to the extent there are inconsistencies in the reasoning, such inconsistencies cannot form the basis of vacatur.  Lerner argues that even if the conversion award is upheld, there was no evidence of malice, fraud or oppression.  She also argues that the panel failed to assess her individual culpability.  It is not the Court's role to review the evidence heard by the panel; unsubstantiated findings cannot form the basis for vacatur.  Accordingly, the Court confirms Interim Award #5, Hearing Order No. 49, and the Final Award incorporating the punitive damages awards.

**D.      Attorneys' Fees and Costs**

Petitioners move to vacate and remand the panel's award of fees and costs if the punitive damages award is vacated.  Because the Court is not vacating the punitive damages award, and because the panel clearly had the authority to award attorneys' fees and costs under the arbitration clause, the Court confirms the panel's award of attorneys' fees and costs.

**E.      Pre-Judgment Interest**

Soward's proposed order, docket no. 54, states that "Soward is entitled to pre-judgment interest on the amounts awarded by the arbitrators that remain unpaid as of the date hereof," and states that "the applicable [California] law rate of interest is 10%."  Bosack argues that "Soward's request for pre-judgment interest on the punitive damages award is improper: California does not allow such interest on punitive damages."  Bosack's Reply, docket no. 58, at 12 n.4 (citing Lakin v. Watkins Assoc., Indus., 6 Cal. 4th 644, 664 (1993)).  Soward argues that Lakin does not apply to arbitration awards, and that "post-award prejudgment interest is mandatory" under California case law.  Soward's Reply, docket no. 62, at 7 (citing Pierotti v. Torian, 81 Cal. App. 4th 17, 27 (2000)).  Unlike the claimant in Pierotti, Soward failed to move for pre-judgment interest in his motion to confirm the arbitration award.  Cf. Pierotti, 81 Cal. App. 4th at 26-28.  Furthermore, the panel was careful to indicate in the Final Award whether and to what extent the panel was granting pre-judgment interest on the various awards.  See Final Award at 7, Item ii ("The panel has set forth with respect to each claim the manner in which prejudgment interest ought to be computed, both with respect to the rate and the date from which interest ought to be calculated"); see also Final Award at 7-11, Items iii, v, vi, vii, x, xv, xviii-xx, xxv-xxvii; compare Final Award at 12, Items xxviii and xxix (awarding no pre-judgment interest on punitive damages).  Soward is not entitled to post-award pre-judgment interest on the punitive damages awards.

ORDER   18–

1  ## III.  CONCLUSION

2         The Court DENIES Petitioner Sandy Lerner's Motion to Vacate Certain Arbitral

3  Awards Pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, docket no. 33, DENIES

4  Petitioners Leonard Bosack, The Leonard Bosack Trust, Richard Troiano, The & Trust, &

5  Capital Partners, L.P., Cartesian Partners, L.P., The Leonard X. Bosack and Bette M. Kruger

6  Charitable Foundation, Inc., and & Capital, Inc.'s Motion to Vacate Arbitration Awards,

7  docket no. 40, and GRANTS David C. Soward's Cross-Motion to Confirm Final Arbitration

8  Award, docket no. 52.  The Court declines to award Soward post-award pre-judgment

9  interest.

10        The Final Award issued by arbitrators J. Lani Bader and Zela G. Claiborne in the

11 matter David C. Soward et al. v. The & Trust et al., No. 74 181 Y 00129 04 DEAR (as

12 amended by Hearing Order No. 52), before the Commercial Arbitration Tribunal of the

13 American Arbitration Association is hereby CONFIRMED.

14        IT IS SO ORDERED.

15        DATED this 25th day of February, 2008.

16

17                                         Thomas S. Zilly
                                           United States District Judge
18

19

20

21

22

23

24

25

26 ORDER  19–                          19